**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **MUHAMMAD BABANDI,** ) | **CASE NO. 1:07CV329** |
| ) | |
| Plaintiff, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | |
| ) | **OPINION AND ORDER** |
| **ALLSTATE INDEMNITY INSURANCE** ) | |
| **COMPANY, et al.,** ) | |
| ) | |
| Defendants. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #33) of Defendant, Allstate Indemnity Company ("Allstate"), for Summary Judgment and the Motion (ECF DKT #40) of Defendant, City of Cleveland, for Summary Judgment. For the reasons that follow, the Motion of Allstate is granted; the Motion of the City of Cleveland is granted in part as to federal claims of Due Process violation and unconstitutional taking of property without just compensation; and the remaining state law claims, including the Counterclaim, are remanded to the Cuyahoga County Court of Common Pleas.

**I. FACTUAL BACKGROUND**

Plaintiff, Muhammad Babandi ("Babandi"), purchased rental property located at 2186 East 71st Street, Cleveland, Ohio. On October 6, 2005, Babandi obtained a Landlords Package Insurance Policy from Allstate. On December 25, 2005, a fire occurred at the insured structure. Babandi reported the fire to Allstate on December 26, 2005 and submitted a written proof of loss

on February 9, 2006. On May 18, 2006, Allstate sent Babandi written notice denying his claim because the "reported loss was caused by fire resulting from vandalism and the subject dwelling was vacant or unoccupied for more than ninety (90) days immediately prior to the vandalism fire." After an investigation by the City of Cleveland, Division of Fire, the City demolished the property on January 17, 2006.

Babandi originally filed his Complaint, against Allstate and the City of Cleveland, in the Cuyahoga County Court of Common Pleas. In his Amended Complaint, Babandi alleged violations of the Ohio Constitution and the United States Constitution. Consequently, the City of Cleveland filed a Petition for Removal of the matter to the United States District Court, based upon this Court's original jurisdiction over federal questions.

Babandi alleges Allstate breached the contract of insurance by denying the claim; Allstate's coverage determination was made in bad faith; and Allstate's investigation was shallow, biased, willful, wanton and malicious.

Babandi further alleges the City of Cleveland condemned and demolished his real property without prior notice in violation of the Due Process Clauses of the Ohio and United States Constitutions; the demolition was an unconstitutional taking of property without just compensation; and the City acted carelessly, negligently, willfully and wantonly, causing Plaintiff to suffer financial loss in excess of $85,000.00.

The City of Cleveland has filed a Counterclaim for the costs associated with the removal of Babandi's building pursuant to the City's emergency demolition procedure.

## II. LAW AND ANALYSIS

**Standard of Review**

**Motion for Summary Judgment**

A summary judgment should be granted only if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See, Fed. R. Civ. P. 56(c). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy, Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994); and the court must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347; *Lee v. Ritter*, No. 1:02-CV-282, 2005 WL 3369616, at *2 (E.D. Tenn. Dec. 12, 2005).  This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323; *Lee*, 2005 WL 3369616 at *2.  Whether summary

judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Defendant Allstate's Motion for Summary Judgment**

**Insurance Contract**

"The Court must adopt the construction of [an] insurance contract which most nearly corresponds with the intention of the parties as ascertained from the words employed by them in their plain, ordinary and usual meaning." *University of Cincinnati v. Arkwright Mut. Ins*. Co., 51 F. 3d 1277, 1280 (6th Cir. 1995) (quoting *River Servs. Co. v. Hartford Accident & Indem*. Co., 449 F. Supp. 622, 626 (ND. Ohio 1977). "Ohio courts called upon to interpret insurance policies must construe the provisions of those policies strictly against the insurer only when the policy provisions are ambiguous." *Arkwright, id.*; *Sutton v. Spencer*, 56 Ohio App. 3d 147 (1989). "Moreover, any reasonable interpretation of an insurance policy that results in coverage for the insured must be adopted." *Arkwright, id.*; *River Servs.*, 449 F. Supp. at 626.

The Allstate Landlords Package Policy issued to Babandi on October 6, 2005 expressly excludes coverage for "[v]andalism, or loss caused by fire resulting from vandalism, if [the] dwelling is vacant or unoccupied for more than 90 consecutive days immediately prior to the vandalism." (Endorsement AS134, ECF DKT #34-2, p.37). The policy defines "vandalism" as "willful or malicious conduct resulting in damage or destruction of property." (Landlords Package Policy, ECF DKT #34-2, p.7).

On December 25, 2005, a fire occurred at Babandi's property located at 2186 East 71st

Street, Cleveland, Ohio.  Lieutenant James A. Lewis, of the City of Cleveland Department of Public Safety, Division of Fire, investigated the fire.  He reported: "The Property was vacant and abandoned at the time of the fire.  There were no utilities servicing the Property, there were no appliances present, and the furnace had been overturned.  The structure appeared to have been exposed to the elements for some length of time."  Also, "[b]ased upon my investigation, I determined and concluded that fires had been deliberately set at three different locations within the Property, and that the fires were incendiary in nature."  (Lewis Affidavit, ECF DKT #33-3).

Jill Munteanu, a Certified Fire Investigator, employed by Bures Consultants, Inc., also investigated the fire at Allstate's request.  After her inspection and conversations with members of the Cleveland Fire Department, representatives of utilities, and neighbors, she found the following: "My inspection revealed that a minimum of three separate and unconnected fires had been ignited inside the House."  "I spoke to two men residing across the street from the House, who told me that the House had been vacant for over a year, . . ."  "Dominion East Ohio Gas Company informed me that there had been no natural gas usage at the House since 2003.  The electric company told me that service to the House had been disconnected in December 2004."  "Based upon my physical inspection of the House and careful examination of all remaining available evidence, coupled with my years of education, training, and experience as a Certified Fire Investigator, it is my professional opinion to a reasonable degree of certainty that the fires at the house were incendiary in cause."  "[F]urther that an ignitable liquid was applied and ignited to accelerate and spread the fires."  "It is further my opinion to a reasonable degree of certainty that a minimum of three separate and unconnected fires were intentionally set inside the House."  (Munteanu Affidavit, ECF DKT #35).

Babandi, himself, testified he never resided at 2186 East 71st Street. (Babandi Depo., ECF DKT #33-4, at 10). He never had any tenants in the building. (Babandi Depo., ECF DKT #33-4, at 10). He never turned on the utilities, electricity, gas or water. (Babandi Depo., ECF DKT #33-4, at 12, 25-26, 38). The property was vacant on the day of the fire. (Babandi Depo., ECF DKT #33-4, at 36-37).

It is, therefore, undisputed the December 25, 2005 fire, intentionally set with the use of an accelerant, was caused by vandalism, i.e., "willful or malicious conduct." In addition, Babandi admits the property was vacant at the time he purchased it, as well as at the time the fire occurred. Babandi provides no evidence the building was occupied at any time during the ninety days prior to the vandalism. Rather, his only argument is that the crucial ninety-day period should be calculated from the date the insurance policy was issued to him.

Applying the plain, ordinary and usual meaning of the coverage exclusion, however, the days are counted retrospectively, "immediately prior to the vandalism." There is no ambiguity in the vacancy exclusion; and the coverage period is "measured by looking back from the date of the loss." See *Gas Kwick, Inc. v. United Pacific Ins. Co.*, 58 F. 3d 1536 (11th Cir., Florida 1995)(analyzing an exclusion if vacant for more than 60 consecutive days before loss). Since there is no lack of clarity in the exclusion, since the vacancy period is calculated retrospectively from the date of the vandalism, and since there is no factual dispute the property was unoccupied at least for a period of ninety days before December 25, 2005, there is no need for the Court to construe the language of the insurance policy against the insurer. The vacancy exclusion barred coverage and Allstate did not breach the contract of insurance by denying his claim.

Babandi also alleges Allstate acted in bad faith by denying coverage and by conducting a

"shallow, biased" investigation.  Only now, in his Opposition Brief, does Babandi make the additional charge that there was misrepresentation, that he was misled by the Allstate agent, and that he purchased the policy in reliance upon the misrepresentation that coverage would be available for the loss he suffered.  First, there is no evidence the investigation was hasty, incomplete or unprofessional.  The Certified Fire Investigator was retained by Allstate, and she performed her inspection within days of the fire.  In addition to personal observation, she contacted fire officials, neighboring property owners, Babandi himself, and utility representatives.  The written report was completed soon thereafter; but the claim still was not denied until after Babandi was given the opportunity to provide his testimony and his recitation of the facts under oath.

Second, the Court finds there was no bad faith.  Under Ohio law, there is no bad faith where the coverage determination is reasonably justified.  *Zoppo v. Homestead Ins. Co.*, 1994-Ohio-46, 171 Ohio St. 3d 552 (1994).   The facts are uncontroverted that the fire at Babandi's property was caused by vandalism, and that the property was vacant for a period of ninety days before the loss.  The loss falls squarely under the clear exclusion in the insurance policy.  Denial of coverage by Allstate, then, cannot serve as a basis for a bad faith claim.

Last, Babandi's allegations of misrepresentations by an Allstate agent are recited in his "affidavit", accompanying his brief in opposition.  However, the affidavit is not signed, sworn, nor notarized.  Thus, it is not competent evidence under Fed. R. Civ. P. 56.  *Pollock v. Pollock*, 154 F. 3d 601, 612 (6th Cir. 1998).  In any event, Plaintiff Babandi cannot contradict his prior sworn testimony to create an issue of fact.  *Lanier v. Bryant*, 332 F. 3d 999, 1004 (6th Cir. 2003).  In his examination under oath, Babandi testified he did not contact anyone at Allstate or any of

Allstate's agents. This belies his current recitation of a conversation he supposedly had with an Allstate agent when he purchased the policy. Therefore, the Court will not consider the incompetent evidence of fraud and misrepresentation.

For all of these reasons, the Motion of Defendant Allstate for Summary Judgment is granted.

### **City of Cleveland's Motion for Summary Judgment**

### **Constitutional claims**

Babandi alleges the City of Cleveland condemned and demolished his property on January 17, 2006, without his consent and without prior notice, in violation of his Due Process rights.

The evidence demonstrates that Battalion Chief Johnny Brewington completed a Forthwith Demolition Request on the date of the fire, and forwarded it to Damian Borkowski, the City-Wide Services Manager for the City of Cleveland. (ECF DKT #40-3; Borkowski Affidavit, ECF DKT #40-4). This notification included the finding that 2186 East 71st Street had sustained heavy fire damage to the roof, attic, and floors; and "is in a hazardous condition and constitutes an immediate danger to human life and the surrounding community." Due to the hazardous condition of the property and the immediacy of the danger, Borkowski began efforts to contact the property owner and initiated the bidding process for the demolition of the structure. (Borkowski Affidavit, ECF DKT #40-4). The tax records had misspelled and reversed Babandi's first and last names. As a consequence, Borkowski was hampered in his search for a phone number and address to contact. (Borkowski Affidavit, ECF DKT #40-4). Babandi did not learn of the demolition until after the fact.

Section 381.04(c) of the Fire Prevention Code provides: "In an emergency, an abatement order may be *summarily* issued to be complied with *immediately* or the fire official may take such action as is necessary to remedy or remove any hazardous or dangerous condition." (Emphasis added). Also, Section 3103.09(j) of the Building Code states: "In cases of emergency that, in the opinion of the Director, involve immediate danger to human life or health, the Director shall promptly cause the building, structure or a portion of those to be made safe or removed. For this purpose he may at once enter the structure or land on which it stands, or any abutting land or structure, with assistance and at the cost as he deems necessary." Furthermore, Section 3103.20(e) of the Building Code provides a procedure by which a party aggrieved by such a decision may appeal to the Board of Building Standards within thirty days of the decision.

In *Harris v. City of Akron*, 20 F. 3d 1396 (6th Cir. 1994), the Sixth Circuit found no violation of an owner's Due Process rights, and followed the United States Supreme Court's lead, to-wit: "When the situation necessitates 'quick action' by the state or makes efforts to provide a meaningful predeprivation process impracticable, the persons acting under state authority may proceed without violating the property owner's rights so long as the state provides an adequate postdeprivation procedure. *Harris, id.* at 1401 (citing *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)). "Such a procedure satisfies the 'fundamental requirement of due process; – an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Harris, id.*; *Parratt*, 451 U.S. at 540.

In the instant matter, the City of Cleveland had admittedly erroneous information which hindered its efforts to notify Babandi of the need to demolish his property – but efforts **were** made. Nonetheless, the appropriate officials determined that the fire at 2186 East 71st Street

created an emergency situation, with danger to human life and the surrounding community. The structure had to be demolished immediately. The City of Cleveland did provide a postdeprivation grievance process. Therefore, as in *Harris* and *Parratt*, this Court finds the City of Cleveland did not violate the property owner Babandi's Due Process rights.

Babandi also alleges in his Amended Complaint that the City of Cleveland condemned and demolished his property without just compensation. "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Coles v. Granville*, 448 F. 3d 853, 861 (6th Cir. 2006) (quoting *Williamson County v. Hamilton Bank*, 473 U.S. 172 (1985)). "Thus, in order for a plaintiff to bring a takings claim in federal court, he or she must first pursue available remedies in state court." *Braun v. Ann Arbor Charter Township*, No. 07-1370, 2008 WL 656630, at *4 (6th Cir. Mar. 13, 2008). Plaintiff Babandi has not yet fully availed himself of his state remedies. Even if he does, the Ohio Supreme Court "has long held that laws enacted in the proper exercise of the police power, even though they result in the impairment of the full use of property by the owner thereof, do not constitute a 'taking of private property' requiring compensation." *State v. Penrod* (1992), 81 Ohio App. 3d 654, 662 (quoting *State ex rel. Taylor v. Whitehead* (1982), 70 Ohio St. 2d 37, 40). This Court finds Babandi's claim of an unconstitutional taking is without merit.

With the resolution of the federal constitutional claims, the remaining claims, in the Amended Complaint and in the City's Counterclaim, are founded in state law only. When a District Court has dismissed all claims over which it had original jurisdiction, the Court has discretion to "decline to exercise supplemental jurisdiction" over state law claims with respect to

which it initially asserted jurisdiction. 28 U.S.C. § 1367(c)(3). [W]hen deciding whether to exercise supplemental jurisdiction, a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 173 (1997). Upon due consideration of all the relevant factors, this Court declines to exercise its supplemental jurisdiction over the related state law claims and counterclaims in this action; and remands those claims to Cuyahoga County Common Pleas Court.

### III. CONCLUSION

For the reasons outlined above, the Motion of Defendant Allstate Indemnity Company for Summary Judgment is granted; the Motion of Defendant City of Cleveland for Summary Judgment is granted in part as to the constitutional Due Process and Takings claims; and the remaining state law claims and counterclaims, as between Plaintiff Muhammad Babandi and the City of Cleveland, are remanded to the Cuyahoga County Court of Common Pleas.

**IT IS SO ORDERED.**

**DATE: 3/31/08**

**S/Christopher A. Boyko**
**CHRISTOPHER A. BOYKO**
**United States District Judge**